Speir, J.
The testator, James A. Roosevelt, by his *452 will appointed his two nephews, James A. and Theodore Roosevelt, executors and trustees to administer his estate. The cash value of the estate to be invested by the trustees amounted to about $2,000,000. After the trustees came into the possession of the estate, and had reduced it to cash, it was their plain duty to invest the fund in proper securities within a reasonable time, and avoid the responsibility for the accumulations of interest which otherwise it might have yielded.
Under the will the investment is committed in general terms to the discretion of the trustees, and they made the loan in question to one Levi Adams, for which improved real estate in the city of New York was pledged as security.
The mortgage was made to the trustees on August 13, 1875, as security for the payment of Adams’ bond for $80,000, and was to become due on May 15, 1881, and contained a provision that interest should be paid at the rate of seven per cent, per annum on the 15 of September, January and May in each year, and in default of the payment of interest for sixty days the principal was to become due.
It is admitted that the investment is proper in form, and the first point presented is, was this real estate thus pledged an insufficient security for the loan of $80,000 ?■ Has the administration of the trust created by the will of James I. Roosevelt for the benefit of the plaintiff been discharged with fidelity, diligence and prudence ? If it, has, the defendants are not liable for losses, which, nevertheless, have happened.
In the absence of directions in the will as to investments the rule is well settled in equity that the trustee is bound to employ such diligence and such prudence in the care and management, as in general prudent men of discretion and intelligence in such matters employ in their own like affairs. This rule is intended and necessarily does exclude all speculations, all, invest *453 ments for an uncertain rise in the market, in short, it excludes whatever does not take into view the nature and subject of the trust. It refers to the conduct of a prudent man in the management of his own property in his own like affairs, when creating a like trust fund for permanent and stable investment for beneficiaries selected by himself. The rule is singularly practical in its application.
The measure of care is thus made plain, being the same as the owner of property would take under the same circumstances.
If a more stringent rule be applied as to the responsibility of trustees, the trust would defeat itself by deterring thoughtful, honest, and prudent men from engaging in the discharge of duties so hazardous and so burdensome; when one has faithfully endeavored to execute a trust, it would be both unreasonable and inequitable to make him an insurer against losses from casualties and misfortunes which ordinary sagacity could not prevent.
It is quite apparent from all the facts in the case, and from the will itself, that the testator chose his two nephews to administer the trust funds, from his knowledge of their business habits, as being well fitted from experience and their occupation in life, and he accordingly intrusted them with unusual broad discretion in its administration.
He authorizes them to make advances in their discretion to each of his children out of the capital of his or her share of the estate from time to time, and in such amounts as may seem safe and conducive to the true interests of the beneficiary.
In the latter part of the year 1876, James A. and Theodore Roosevelt, as executors, made a final accounting before the surrogate of the city of New York, to which proceeding the plaintiff was a party, and by consent of all the parties, two gentlemen of experience *454 in such matters were appointed to appraise the various securities and assets. The Adams bond and mortgage was valued at par, and the property mortgaged was valued at $140,000. By the final decree, entered also by consent, it was ordered that the said executors set apart for testator’s son (the plaintiff), and invest in the names of said executors, as trustees for the plaintiff, assets and securities at the valuations, being those as ascertained by the appraisers, among which the Adams mortgage was included. In pursuance of said order and decree, the bond and mortgage was assigned to the executors as trustees, and was held by them in the plaintiff’s trust.
In addition to the fact that the trustees had been familiar with the character and value of the real estate pledged as security for the loan in question for thirty years, that they were themselves large owners of real estate in different parts of the city, and that they consulted together some time before upon the advisability of purchasing it for themselves ; the evidence conclusively shows, that the greatest care and prudence were exercised- by them and especially by the surviving trustee in the examination of the premises at the time the loan was made.
He is himself an experienced expert in matters of real estate. He personally ascertained the annual rental values of the several lots, and the condition of the improvements. He knew the bondsman, and his financial standing to be good at the time. The total income of the annual rents then amounted to the sum of $13,500. Most of the building materials consisted of brick and stone.
The weight of the testimony of the experts on the trial shows that the property is now worth from $110,000 to $120,000, and the net income at the present time is over 5% per cent, on the "investment of $96,048 *455 being the sum which the property has cost the trust estate.
The objection is urged that the trustees were careless, and guilty of unnecessary delay in not proceeding promptly to foreclose the mortgage^ and thereby suffered a loss in interest and rents which could have been collected. The earliest day when the mortgage became due by reason of default was March 15, 1877. The most satisfactory and conclusive reasons appear from all the evidence in the case why such delay was had. The trustee, in my judgment, would have been acting in disregard of his plain duty and against the true interest of the estate, had he not exercised his sound discretion in negotiating for the sale of the premises upon the footing of reducing the amount of the mortgage which was the chief, occasion of the delay complained of. The difficulties encountered by the attorneys having the foreclosure in charge are a sufficient answer to the objection made in this respect. As before stated, the testator wisely conferred upon the trustees a large discretion, and the only question is, did they discharge their duties wisely, with fidelity and prudence. That they have done so, I think, cannot be well questioned, and they should not be held for losses.
I do not agree with defendant’s counsel that because the plaintiff appeared on the accounting in the surrogate’ s court by counsel, and that the investment in question was not made in the plaintiff’s trust until after the decree was entered, it was therefore by his consent, and that he cannot afterwards question it. The questions in issue here were not raised in the surrogate’s court, nor could they be ; but I see no reason why the fact that this property, which was appraised by sworn appraisers in the surrogate’s court, should not be received as some evidence, at least, of its.real value, especially as it was about the time the bond and mortgage was *456 assigned to the trustees, and held by them on the plaintiff’s trust.
It is contended by plaintiff’s counsel, that if it be true that the property even now be worth more than the principal, interest and taxes, then the court has the power to decree that the defendant keep the property and make the plaintiff’s estate good for the deficiency. This might be done if the defendant had not exercised a sound discretion, and had not acted in good faith since the investment was made, and had been careless and imprudent, and guilty of negligence. If, on the other hand, he has complied in all respects with the settled rule in equity in the administration of the trust, it necessarily follows that the trustee should not be held liable for losses, casualties and misfortunes which ordinary sagacity could not prevent. I therefore think the defendant should have judgment.